UNITED STATES DISTRICT COURT                          For Online Publication Only
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MICHAEL THOMAS NUTLEY,

                        Plaintiff,
          -against-                                   **MEMORANDUM & ORDER**
                                                      15-CV-02341
The ACTING COMMISSIONER of the SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.
-------------------------------------------------------------X
**APPEARANCES:**

          Christopher J. Bowes, Esq.
          Office of Christopher James Bowes
          54 Cobblestone Drive
          Shoreham, New York 11786
                    *Attorney for Plaintiff*

          Candace Scott Appleton
          United States Attorney's Office
          Eastern District of New York
          271 Cadman Plaza East
          Brooklyn, New York 11201
                    *Attorney for Defendant*


**AZRACK, United States District Judge:**

          Plaintiff Michael Thomas Nutley challenges the decision of the Acting Commissioner of

the Social Security Administration (the "Commissioner"), who concluded, after a hearing before

an Administrative Law Judge, that plaintiff is not disabled for purposes of receiving disability

insurance benefits under Title II of the Social Security Act (the "Act"). The case is before the Court

on the parties' cross-motions for judgment on the pleadings.  Because the Administrative Law

Judge's decision was supported by substantial evidence, the Commissioner's cross-motion for

judgment on the pleadings is GRANTED and plaintiff's motion for judgment on the pleadings is

DENIED.

1

## I. BACKGROUND

Plaintiff worked as a New York City Policy officer for 20 years, until his retirement in 2011 due to alleged work-related injuries, after which plaintiff received a pension. (Administrative Transcript ("Tr.") Tr. 52-53, 122-23, 164.) On May 11, 2012, plaintiff filed for disability insurance benefits with the Social Security Administration (the "SSA"). (Tr. 74.) Plaintiff alleged disability beginning April 30, 2011, due to herniated discs, bulging discs, multiple failed right knee surgeries, numbness, tingling, and function loss. (Tr. 138.) The SSA initially denied plaintiff's application on October 19, 2012. (Tr. 74, 77-80.) On November 5, 2012, plaintiff filed a timely request for a hearing. (Tr. 81.) Plaintiff appeared, along with counsel, before Administrative Law Judge Andrew S. Weiss (the "ALJ") on October 8, 2013. (Tr. 49-73.)

In a decision dated November 6, 2013, the ALJ found that plaintiff had severe impairments of "left ankle deficits, thoracic disc disease, right knee deficits, right wrist deficits and Type II diabetes mellitus," and had "right knee arthroscopies in 1992 and 1996; right carpal tunnel release in 2007; and left ankle surgery in 2008 and 2009 for plates and screws followed by a revision." (Tr. 12.) The ALJ concluded that despite these impairments, plaintiff was not disabled because he still retained the residual functional capacity ("RFC") to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a)" and that any time off task required by plaintiff could be accommodated by normal breaks. (Tr. 13.)

Plaintiff filed a timely request for review before the Appeals Council on November 20, 2013. (Tr. 197-213.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on February 12, 2015. (Tr. 1-5.) This appeal followed.

## II. DISCUSSION

### A.  Standard of Review

A district court may set aside the Commissioner's determination that a plaintiff is not disabled "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (quoting Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000)). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  The district court does not determine *de novo* whether plaintiff is disabled. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004).  Rather, to the extent any findings are supported by substantial evidence, they "shall be conclusive." 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  However, if an ALJ overlooks an important piece of evidence, remand may be appropriate to ensure the ALJ properly considered such evidence.  See Hanes v. Comm'r of Soc. Sec., No. 11-CV-1991, 2012 WL 4060759, at \*13 (E.D.N.Y. Sept. 14, 2012) (remanding because the ALJ's factual inaccuracies "suggest[ed] a potential misunderstanding of the record").

### B. Legal Standards

#### 1. Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For a person to be under a disability, the impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration established a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). The claimant bears the burden on the first four steps, but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

#### 2. RFC Determination

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical

limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. §

404.1545(b)).

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical

evidence, opinions of examining or treating physicians, subjective evidence submitted by the

claimant, as well as the claimant's background, such as age, education, or work history." Crocco,

2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n. 1 ("In assessing a claimant's

RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's

subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)).

An RFC determination must be affirmed on appeal when it is supported by substantial

evidence in the record. Barry, 606 F. App'x. at 622 n. 1. However, "[i]f the RFC assessment

conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not

adopted." Martinez v. Astrue, No. 06–CV–6219, 2010 WL 331694, at *9 (S.D.N.Y. Jan. 28, 2010)

(citing Social Security Ruling 96–8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996)).

### 3. Treating Physician Rule

An ALJ's decisions regarding the weight to be accorded to each medical opinion in the

record and how to reconcile conflicting medical opinions is governed by the treating physician

rule. 20 C.F.R. § 404.1527(c).[1]

According to the treating physician rule, if a treating physician's opinion regarding the

nature and severity of an individual's impairments is supported by "medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence"

---

[1] In 2017, new SSA regulations came into effect. The newest regulations apply only to claims filed with the SSA on or after March 27, 2017. Accordingly, because plaintiff's claim was filed in 2012, the Court applies the regulations that were in effect at the time of filing. See, e.g., Ogirri v. Berryhill., No. 16-CV-9143, 2018 WL 1115221, at *6 n.7 (S.D.N.Y. Feb. 28, 2018) (noting 2017 amendments to regulations but reviewing ALJ's decision under prior versions); Rousey v. Comm'r of Social Sec., No. 16–CV–9500, 2018 WL 377364, at *8 n. 8 & *12 n. 10 (S.D.N.Y. Jan. 11, 2018) (same).

in    the    record,    the    ALJ    will    credit    that    opinion    with    "controlling    weight."

20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

If a treating physician's opinion is not given controlling weight, the ALJ must consider

various factors in determining how much weight to give the opinion, including:

(i) the frequency of examination and the length, nature and extent of the treatment
relationship;

(ii) the evidence in support of the physician's opinion, including any medical signs,
laboratory findings, and supporting explanations provided by the physician;

(iii) the consistency of the opinion with the record as a whole;

(iv) whether the opinion is from a specialist; and

(v) any other factors brought to the Social Security Administration's attention that
tend to support or contradict the opinion.

See 20 C.F.R. § 404.1527(c); Halloran, 362 F.3d at 32.  An ALJ is required to give "good reasons"

in support of her determination on the weight given to a treating physician's opinion, and the

failure to provide "good reasons" for not crediting the opinion is grounds for remand.  See Schaal

v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998).

## C.  **The ALJ's Decision**

In finding that plaintiff can perform "the full range of sedentary work as defined in 20 CFR

404.1567(a)," (Tr. 7-21), the ALJ gave "limited weight" to the opinions of plaintiff's three treating

physicians.   Dr. Mitchell Goldstein, an orthopedist, opined in a September 2013 functional

assessment that plaintiff, in an eight-hour workday, can sit for less than four hours, stand and walk

for less than two hours, and lift more than five but less than ten pounds (up to one third of the day).

(Tr. 518-19.)  Additionally, he opined that plaintiff "requires periods of bed rest during the work

day" and "requires an average 2 or more sick days off each month," and is "disabled and unable

to work [in] any capacity due to constant and severe back pain, ankle pain, knee pain, wrist pain,

6

weakness, fatigue, decreased range of motion, difficulty with ambulation and ADL's." (Id.) In

giving Dr. Goldstein's opinion limited weight, the ALJ found that it "appear[ed] to be primarily

based on the claimant's subjective complaints and not objective evidence." (Tr. 14.)

Dr. Neil Kirschen, a pain management specialist, similarly opined in a September 2013

functional assessment that plaintiff, during an eight-hour work day, can sit less than four hours,

stand or walk for less than two hours, lift more than five but less than ten pounds (up to one third

of the day), and lift less than five pounds (up to two-thirds of the day). Dr. Kirschen opined that

these limitations would interfere with plaintiff's ability to perform work during an eight-hour day,

that he would require frequent breaks, and that his pain would prevent him from performing eight

hours of work. (Tr. 512-17.) The ALJ assigned limited weight to Dr. Kirschen's opinion, noting

that it was "inconsistent with the clinical evidence of record, including Dr. Kirschen's own

examination findings." (Tr. 14.)

Dr. Marc Parnes, D.O., a family practitioner who provided physical therapy for plaintiff's

back and left ankle, opined in a September 2013 functional assessment that plaintiff, in an eight-

hour day, can sit for less than four hours, can stand or walk for less than two hours, lift more than

five pounds but less than ten pounds (up to one-third of the day), and no more than five pounds

(up to two-thirds of the day). (Tr. 681-83.) Dr. Parnes further indicated that plaintiff requires

periods of bed rest and frequent breaks during the work day. (Id.) The ALJ assigned limited

weight to Dr. Parnes' opinion, stating that "it does not even appear that Dr. Parnes has directly

treated the claimant's orthopedic complaints" and that "his conclusions are not in accord with the

medical evidence of record." (Tr. 15.)

The ALJ, however, gave "weight" to the opinion of consultative examiner Dr. Linell

Skeene, who performed a consultative orthopedic examination on plaintiff on September 18, 2012.

(Tr. 15.)  Dr. Skeene opined that plaintiff had a moderate limitation for reaching and heavy lifting due to limited range of motion of the thoracic spine and tenderness over the thoracic spine.  (Tr. 417.)  The ALJ found that Dr. Skeene's conclusions were "in accord with his (sic) actual examination findings."  (Tr. 15.)

In a decision dated November 6, 2013, the ALJ found that plaintiff had severe impairments of "left ankle deficits, thoracic disc disease, right knee deficits, right wrist deficits and Type II diabetes mellitus," and had "right knee arthroscopies in 1992 and 1996; right carpal tunnel release in 2007; and left ankle surgery in 2008 and 2009 for plates and screws followed by a revision." (Tr. 12.)  The ALJ concluded that despite these impairments, plaintiff was not disabled because he still retained RFC to perform "the full range of sedentary work as defined in 20 CFR 404.1567(a)" and that any time off task required by plaintiff could be accommodated by normal breaks.  (Tr. 13.)  In making his RFC determination the ALJ noted that plaintiff "worked in spite of all of [his] established impairments."  (Tr. 15.)

## D.  Plaintiff's Arguments

Plaintiff argues that the ALJ erred when he concluded that plaintiff retained the capacity for the full range of sedentary work because the evidence shows plaintiff's carpal tunnel syndrome limits the use of his dominant right hand, and that plaintiff could not meet the sitting demands of sedentary work.  (Pl.'s Br. at 13-25.)  With respect to plaintiff's alleged sitting limitations, plaintiff asserts that that the ALJ failed to follow the treating physician rule when he assigned limited weight to the opinions of plaintiff's treating physicians, who opined that plaintiff lacked the capacity to sit for the six hours required of sedentary work, and improperly relied on the opinion of the consultative examiner.  (Pl.'s Br. at 21-22.)  In addition, plaintiff argues that the ALJ improperly found plaintiff's subjective complaints of pain to be not credible.  (Tr. 23-24.)  For the

8

reasons explained below, the Court does not find any of plaintiff's arguments to be persuasive and finds that there is substantial evidence in the record to support the ALJ's conclusions.

**E.  Analysis**

**1.  Plaintiff's Right Hand**

Plaintiff argues that the ALJ should have found that plaintiff lacks the bilateral manual dexterity required for sedentary work.  Plaintiff points to: his testimony that he had only limited use of and pain in his right hand; his complaints of weakness and difficulty using his hand to Dr. Goldstein; and Dr. Goldstein's findings of tenderness and muscle atrophy in the right hand as well as positive Tinel's sign and weakness of grip.  (Tr. 65, 648-50, 651-53; Pl.'s Br. at 19.)  Plaintiff also cites Dr. Parnes' report that flexion of the right hand was limited to 45 degrees and the fact that Dr. Parnes opined that plaintiff experienced a 30% loss of use in his dominant right hand.  (Tr. 521; Pl's Br. at 19.)  Plaintiff further notes that Dr. Kirschen advised that plaintiff still had right hand pain, numbness, and burning sensation despite carpal tunnel release surgery.  (Tr. 514-17; Pl.'s Br. at 19.)  Plaintiff also references the ALJ's finding at Step Two of the sequential analysis that plaintiff had a "severe" impairment of a "right wrist deficit," which would limit his ability to perform basic work activities.  (Pl.'s Br. at 18.)

As an initial matter, "[a]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is <u>de minimis</u> and is intended only to screen out the very weakest cases."  <u>McIntyre v. Colvin</u>, 758 F.3d 146, 151 (2d Cir. 2014) (citing <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995)).  As explained below, the ALJ's RFC determination, which included no limitations concerning plaintiff's right hand, was supported by substantial evidence.

9

In their functional assessment questionnaires, none of plaintiff's treating physicians opined as to any specific functional limitations concerning plaintiff's right hand. (See Tr. 517-19, 681-683.)[2] Additionally, it does not appear that Drs. Goldstein, Kirschen and Parnes even prescribed treatment to plaintiff for his hand. For example, in his September 2013 narrative report, Dr. Goldstein does not note that he prescribed treatment of plaintiff's hand between July 2012 and May 2013. (Tr. 687.) Moreover, although upon examining plaintiff's hand, Dr. Goldstein found that plaintiff had tenderness and muscle atrophy in the right hand as well as positive Tinel's sign and weakness of grip, Dr. Goldstein's records also show examination findings and objective testing concerning plaintiff's hand that support the ALJ's RFC determination. Dr. Goldstein found that plaintiff's right wrist ranges of motion were intact in flexion, extension, radial deviation, ulnar deviation, pronation, and supination. (Tr. 392, 394, 396, 400, 402, 404, 406, 408, 410, 650, 653, 655.) Dr. Goldstein's records also state that right hand x-rays show no significant abnormalities. (See id.)

Furthermore, other evidence in the record supports the ALJ's RFC determination. A 2012 MRI of plaintiff's hand revealed that the muscle planes within the right hand were intact and unremarkable without evidence of abnormal signal or focal tear, with evidence of a "small ganglion" and "tiny cyst" suggesting an old bone injury. (Tr. 413.) Dr. Skeene, the consultative examiner also conducted a thorough examination of plaintiff's hands, wrists, and fingers, and found that he had intact finger dexterity, full (5/5) grip strength, full range of motion, full muscle strength, and no sensory abnormalities. (Tr. 416.) Plaintiff further told Dr. Skeene that he was

---

[2] Plaintiff argues for the first time in his reply that the case should be remanded to fill the factual gap created by the absence of an opinion from his treating physicians addressing plaintiff's functional limitations concerning his right hand. (Pl.'s Reply at 2.) However, aside from the fact that plaintiff did not raise this argument in his initial motion papers, remand is not warranted to develop the record because the available medical evidence is adequate to make a determination that the plaintiff is not disabled. See Cichocki v. Astrue, 534 Fed. App'x 71, 77 (2d Cir. 2013).

10

independent in activities of daily living including showering and dressing himself, cooking, cleaning, doing laundry, shopping and childcare. (Tr. 417.)  Finally, the record shows that plaintiff performed his job as a police officer for years *after* his diagnosis with carpal tunnel syndrome and following his carpal tunnel release surgery.[3]  (See e.g., Tr. 55-56, 395.)

In light of the above, the ALJ's RFC determination with respect to plaintiff's right hand was not erroneous and was supported by substantial evidence.

### 2.  Plaintiff's Sitting Ability

The ALJ's RFC finding that plaintiff could sit for long enough to perform sedentary work is also supported by substantial evidence.  The ALJ afforded plaintiff's treating sources limited weight, noting that their opinions concerning plaintiff's functional limitations seemed to be based largely on plaintiff's self-reports, were not supported by their examination findings, or were not in accord with the medical evidence of record. (Tr. 14-15.)   Dr. Goldstein's assessment appears to be focused on plaintiff's subjective reports of pain, and, as defendant points out, Dr. Goldstein's opinion that plaintiff needed periods of bed rest is absent from any treatment note in the record.[4] (See Tr. 519.)  Further, Dr. Goldstein's treatment appears to have focused on plaintiff's right knee and left ankle, not his back, and his examinations of plaintiff's back revealed only diminished flexibility, extension and rotation and mid-line tenderness.  (See e.g. Tr. 399-400.)  Similarly, in contradiction to his hearing testimony, plaintiff reported to Dr. Goldstein that he only had difficulty walking, not sitting.  (Tr. 399.)  And, in his September 2013 narrative report, Dr. Goldstein did not

---

[3] Although plaintiff argues in his reply that there are various dates given for the date of plaintiff's carpal tunnel release surgery, including 2005, (Tr. 395), 2007, (Tr. 414), and 2009, (Tr. 514), (see Pl.'s Reply at 3), it is not disputed that plaintiff's carpal tunnel syndrome and surgery predated his retirement in 2011 by, at the very least, two years. Moreover, the ALJ found that the carpal tunnel surgery happened in 2007, (Tr. 12), which means that plaintiff worked as a police officer for almost four years after the carpal tunnel surgery.

[4] Similarly, although Dr. Parnes opined in his functional assessment that plaintiff requested bed rest, Dr. Parnes' treatment notes contain no references to bed rest.  (Tr. 521-23, 682-84, 524-617.)

mention that plaintiff had difficulty sitting. (Tr. 687.) Similarly, neither Dr. Kirschen's treatment notes nor his narrative report documents plaintiff's alleged inability to sit for more than four hours per day. (Tr. 512, 514, 516.)

In addition, the record contains a thoracic spine MRI performed on plaintiff on July 25, 2008 which revealed a T4-T5 left lateral bulge contacting the cord; T5-T6 small left lateral herniation with mass effect on the left ventral cord; T7-T8 central herniation touching the cord; and T10-T11 right lateral osteophytic ridge without mass effect on the cord. (Tr. 627-28.) Dr. Goldstein relied on this MRI in his treatment notes and narrative report in describing plaintiff's impairments, (see e.g., Tr. 403, 686), and plaintiff relies on this MRI in his brief as evidence that plaintiff cannot perform the demands of sedentary work. (Pl.'s Br. at 22.) However, after this 2008 MRI, plaintiff continued working as a police officer for nearly three years, until his retirement in 2011, despite the back issues shown in the MRI.

Further, the ALJ's RFC was supported by Dr. Skeene's opinion. Although Dr. Skeene noted that plaintiff had limited range of motion of the lumbar spine, she found that despite plaintiff's back impairments, plaintiff was only moderately limited for reaching and heavy lifting and noted no sitting limitations. (Tr. 417.) Plaintiff's argument that Dr. Skeene's opinion is unreliable, in part due to the fact that she was not given the opportunity to review plaintiff's thoracic spine MRI, is also without merit. (Pl.'s Br. at 22.) The Court does not find that Dr. Skeene was required to review plaintiff's MRI or that her inability to do so undermined her findings or opinion. As mentioned above, plaintiff continued to work for three years despite the back issues reflected in his MRI. In addition, it appears Dr. Skeene was aware of the MRI and plaintiff's back impairments and specifically noted that plaintiff had informed her that a thoracic MRI had revealed bulging and herniated discs. (Tr. 414.) Dr. Skeene further noted plaintiff's

12

reports of back pain, numbness, and weakness, and that symptoms were aggravated by reaching and lifting greater than ten pounds. (Id.) As noted, she conducted a thorough orthopedic examination and opined that plaintiff was only moderately limited for reaching and heavy lifting due to limited range of motion of the lumbar spine and tenderness over the thoracic spine. (Tr. 417.)

Therefore, the Court finds that the ALJ's RFC determination with respect to plaintiff's sitting ability was not erroneous and was supported by substantial evidence.

### 3. The ALJ's Credibility Finding

Plaintiff's argument that the ALJ's credibility finding was erroneous similarly cannot prevail. (Pl.'s Br. at 23-25.) The ALJ determined that plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 15.) The ALJ's finding is supported by substantial evidence. For example, plaintiff had told Dr. Skeene that his activities of daily living were showering and dressing independently, cooking, doing laundry, and shopping. (Tr. 415, 153-55.) He also said that he performed childcare. (Id.) Also, despite his pain, plaintiff was still able to drive an automobile. (Tr. 60, 155.) The ALJ reasonably weighed the evidence and determined that plaintiff's own testimony regarding his daily activities was not credible in light of what he told Dr. Skeene and in light of the medical evidence in the record. Moreover, the ALJ's findings were buttressed by the fact that plaintiff's impairments did not preclude him from working as a police officer until his retirement.

In sum, in determining plaintiff's RFC, the ALJ properly evaluated the opinion evidence, weighed and resolved any conflicts in record, and properly considered plaintiff's testimony. The ALJ's RFC finding for sedentary work was therefore supported by substantial evidence in the record.

### III. CONCLUSION

For the reasons set forth above, the Court GRANTS the Commissioner's cross-motion for judgment on the pleadings, and DENIES plaintiff's motion for judgment on the pleadings. The Clerk of Court is directed to enter judgment in favor of the Commissioner and to close this case.

**SO ORDERED.**

Dated: September 10, 2018
Central Islip, New York

    /s/ JMA
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
